# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SKYLER JAMES FOWLER, | Case No.: 2:19-cv-01418-APG-DJA |
| Plaintiff | **Order Granting in Part Motion for Temporary Restraining Order, Denying in Part Motion for Preliminary Injunction, and Setting Evidentiary Hearing** |
| v. | |
| STEVE SISOLAK, et al., | [ECF Nos. 27, 28] |
| Defendants | |

Plaintiff Skyler Fowler, an inmate incarcerated at High Desert State Prison (HDSP), moved for injunctive relief on various claims that the defendants are violating his constitutional rights to adequate medical and dental care, outdoor exercise, and sanitation. ECF Nos. 27, 28. Although Fowler's second amended complaint had not been screened at the time he filed his motions, I nevertheless directed the Attorney General's Office to respond to the motions on the defendants' behalf. ECF No. 30. The Attorney General's Office responded, which prompted Fowler to file motions for leave to amend his motions for injunctive relief to correct procedural deficiencies, for leave to file supplemental exhibits in support of his reply, and to strike exhibits attached to the defendants' opposition. I denied Fowler's motion to strike, but granted his motions to amend and supplement, and granted both parties leave to file supplemental briefs. ECF No. 75. Neither party filed a supplemental brief.

Fowler's motions seek relief in seven general areas: (1) his neurological problems, (2) his dental problems, (3) his hand injury, (4) his digestive issues, (5) insufficient medical staffing, (6) outdoor exercise, and (7) inadequate cleaning supplies. The defendants oppose injunctive relief on any of these grounds. I grant in part Fowler's motion for temporary restraining order to the extent that I order the defendants to schedule an appointment for Fowler with Dr. Dupry

within 20 days.  I deny his motion for temporary restraining order in all other respects.  I deny his motion for a preliminary injunction with respect to his dental care, his digestive issues, and insufficient staff.  I will conduct an evidentiary hearing on his request for a preliminary injunction related to his neurological problem, his hand injury, outdoor exercise, and sanitation.

# I.  ANALYSIS

To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Where a party seeks a mandatory injunction ordering the "responsible party to take action," I must "deny such relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quotation omitted).

Additionally, in the context of a civil action challenging prison conditions, injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).  I must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out" in § 3626(a)(1)(B). *Id.*  A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation and emphasis omitted).

Fowler's motions for injunctive relief are based on his Eighth Amendment claims relating to denial of medical and dental care, denial of outdoor exercise time, and failure to provide adequate cleaning supplies. "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective." *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (quotation omitted). "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." *Id.* (quotation omitted).

Most of Fowler's claims relate to the denial of medical care. "To prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show deliberate indifference to his serious medical needs." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quotation omitted). A serious medical need "exists if failure to treat the injury or condition could result in further significant injury or cause the unnecessary and wanton infliction of pain." *Id.* (quotation omitted). The defendants do not dispute that Fowler's claims regarding his seizures, hand injury, and dental problems are serious medical needs.

The question for these claims thus is whether the prison officials are deliberately indifferent to those needs. An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health and safety." *Id.* (quotation omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Id.* (quotation omitted).  A prison

official is deliberately indifferent to a prisoner's serious medical need if he denies, delays, or

intentionally interferes with medical treatment. *Hutchinson v. United States*, 838 F.2d 390, 394

(9th Cir. 1988).  When deciding whether an official has been deliberately indifferent to an

inmate's serious medical needs, I "need not defer to the judgment of prison doctors or

administrators." *Colwell*, 763 F.3d at 1066 (quotation omitted).  But a "difference of opinion

between a physician and the prisoner—or between medical professionals—concerning what

medical care is appropriate does not amount to deliberate indifference." *Id.* at 1068 (quotation

omitted).  Rather, "[t]o show deliberate indifference, the plaintiff must show that the course of

treatment the doctors chose was medically unacceptable under the circumstances and that the

defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id.*

(quotation omitted).

   A prison official's "negligence in diagnosing or treating a medical condition, without

more, does not violate a prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d

1051, 1057 (9th Cir. 2004) (quotation omitted).  And although a prisoner has a right to adequate

medical care, a prisoner has "no independent constitutional right to outside medical care

additional and supplemental to the medical care provided by the prison staff within the

institution." *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986).

### A.  Neurological Problems

   Fowler contends the defendants have been and continue to be deliberately indifferent to

his need to be seen by a neurologist to diagnose and treat his seizures and other neurological

problems.  He requests that I order the defendants to refer him to a neurologist and schedule an

appointment within 10 days. ECF No. 27 at 7-8.  The defendants respond that Fowler has already

been seen and treated for his seizures, but he has refused the prescribed medication.  They thus contend they have not been deliberately indifferent to his medical needs because Fowler simply disagrees with their course of treatment.

For 23 days in January 2019, Fowler did not receive his medications for obsessive compulsive disorder and anxiety. ECF No. 62 at 20.  As a result of not receiving his medication, he fainted and hit his head on the concrete floor. *Id.* at 30.  Thereafter, he began to experience seizures, loss of balance, dizziness, memory loss, and difficulty concentrating. *Id.*  Fowler notified several of the defendants about the problems he was experiencing, but no one except Dr. Dupry tried to assist him. *Id.*; ECF No. 62-1 at 9, 13.

Dr. Dupry is a psychiatrist who first prescribed Depakote to Fowler in October 2019. ECF No. 62-1 at 21.  In early November 2019, Fowler sent a medical kite indicating that the Depakote was not helping and instead exacerbated his dizziness and seizures. *Id.*  He began to refuse to take the Depakote. ECF No. 34-5.  Fowler filed two more kites in late December and mid-January requesting an appointment. ECF No. 62-1 at 27, 29.

Dr. Dupry saw Fowler in early February 2020 and prescribed Tegretol (also known as Carbamazepine), which is a drug for treating seizures. ECF No. 62 at 30; 62-1 at 27.  Fowler contends the drug did not help with his seizures and had negative side effects, so he stopped taking it and requested a medical appointment. ECF No. 62 at 30; 62-1 at 31; 34-5.  Since then, Fowler has sent multiple medical kites, but he claims he has not been seen by Dr. Dupry or anyone else. ECF Nos. 62 at 30; 62-1 at 33, 41, 43, 45, 47.  Fowler's medical records show that Dr. Dupry discontinued the Tegretol in March 2020 because Fowler refused to take it. ECF No. 34-5 at 2.  There is no evidence that Dr. Dupry or anyone else has seen Fowler since March 2020 to address his seizures.

"A prisoner need not prove that he was completely denied medical care" to establish a claim for deliberate indifference to serious medical needs. *Lopez*, 203 F.3d at 1132.  Thus, the fact that Dr. Dupry prescribed two different medications to Fowler does not end the matter.  Fowler has presented evidence that he advised Dr. Dupry that neither medication was working to help with his seizures and that the side effects were too severe.  Despite knowing that Fowler was experiencing seizures and was rejecting the prescribed medication because it did not benefit him and instead caused deleterious side effects, Dr. Dupry has nevertheless not seen Fowler again since March 2020.

While the defendants chalk this up to a disagreement over the proper course of treatment, they have presented no evidence that it is medically acceptable to decline to see the patient again for months after the patient has indicated the prescribed medication is not benefitting him and is instead causing undesirable side effects.  Fowler's presently unrebutted evidence is that Dr. Dupry told him to try the medication for about four days and Fowler did so, but then stopped because it was not helping and the side effects were too severe. ECF No. 62-1 at 31.  Despite Fowler following Dr. Dupry's instructions, Dr. Dupry has not followed up.  Fowler thus has raised at least serious questions going to the merits on this claim. *See Darrah v. Krisher*, 865 F.3d 361, 369 (6th Cir. 2017) (stating that a genuine dispute as to deliberate indifference existed where doctor continued to treat the inmate with a medication after the inmate "had been on the drug for several months without any noticeable improvement"); *Foster v. Enenmoh*, 420 F. App'x 718, 720 (9th Cir. 2011) (holding inmate stated a deliberate indifference claim where doctor allegedly knew that Metamucil had been effective and that the other treatment he prescribed was causing pain and worsening the inmate's condition, but he allegedly denied the request for Metamucil).

Fowler also has presented evidence of a likelihood of irreparable harm if he is not treated. He experiences seizures, which may result in him falling if left untreated.

However, it is not clear from the record that the balance of hardships tips sharply in Fowler's favor or that a mandatory injunction requiring referral to a neurologist is in the public interest. Fowler's refusal to take the prescribed medication muddies the water as to whether Dr. Dupry is deliberately indifferent or whether Fowler is refusing a medically reasonable course of treatment with which he simply disagrees. Additionally, in light of the current Covid-19 pandemic, I lack information on what logistical barriers may impede referral to an outside neurologist. I therefore deny Fowler's request for a temporary restraining order requiring a referral to a neurologist. But I grant Fowler's motion to the extent that I will order the defendants to schedule an appointment with Dr. Dupry by January 8, 2021. By January 15, 2021, the defendants shall file under seal a report from Dr. Dupry confirming that he saw Fowler and documenting his diagnosis, his recommended treatment going forward, and whether he recommends referral to a neurologist. As for Fowler's motion for a preliminary injunction, I will set this matter for an evidentiary hearing regarding whether referral to a neurologist is warranted.[1]

**B. Dental Problems**

Fowler contends that even though the dentist recommended he get a root canal, the dentist will only do an extraction because Nevada Department of Corrections (NDOC) policy does not allow for root canals. Fowler contends the decision to deny him a root canal is based on considerations other than medical need and thus violates his Eighth Amendment right to

---

[1] The defendants do not address Fowler's assertion that, as a psychiatrist, Dr. Dupry is not qualified to diagnose and treat Fowler's neurological issues, including his seizures. The parties should be prepared to address this issue at the evidentiary hearing.

adequate medical care.  He requests that I order the defendants to refer him to a properly

equipped dentist to perform a root canal. ECF No. 27 at 8.  The defendants respond that NDOC

Administrative Regulation (AR) 631 provides that root canals on posterior teeth will not be

performed unless the teeth are part of a bridge or a crown that is already present, or may be

performed at the dentist's discretion when medically necessary.  The defendants contend Fowler

has not shown he needs a root canal because he was offered the medically acceptable option of

having the tooth removed.  The defendants argue Fowler thus cannot show he is likely to prevail

on a deliberate indifference claim because the dental staff responded to his complaints of pain

and offered a course of treatment.

In late March 2019, Fowler filed medical kites for treatment on his tooth that had a

painful cavity and that was also broken by a rock in his food. ECF No. 62 at 40.  Dr. Sanders saw

Fowler on May 3, 2019. *Id.*  According to Fowler, Dr. Sanders told him that if the pain persisted,

Fowler would need a root canal, and that NDOC does not perform root canals. *Id.*  Fowler filed

another kite two days later because he was still in pain. *Id.*  Fowler filed an informal grievance

on May 7, stating that it was unconstitutional to extract a tooth that could be saved, and he

requested a root canal. *Id.*; ECF No. 62-2 at 38.

Fowler filed a medical kite a little over a month later, to which medical responded that

"NDOC does not do root canals +/or crowns.  If you are in that much pain, you most likely need

an extraction." ECF Nos. 62 at 40; 62-2 at 40.  Fowler's grievances were denied, with responses

such as "[w]e do not perform root canals in NDOC" and that a root canal is not an available

service unless the inmate had an existing bridge, partial bridge, or crown, which Fowler did not

have. ECF No. 62-2 at 46, 62.  These responses were based on AR 631.04, which states that root

canals on posterior teeth "should not be provided" unless the teeth are "an integral part of a

bridge or partial support or a crown that is already present or at the discretion of the institutional Dentist, when medically necessary." ECF No. 32-1 at 4.

Fowler contends that at another appointment in November 2019, Dr. Sanders and Dr. Doe 18 discussed Fowler's request for a root canal and told him they were not allowed to perform or recommend that treatment. ECF No. 62 at 41.  According to Fowler, he told Dr. Sanders about the provision in AR 631.04 that allows for a root canal at the dental provider's discretion. *Id.* Fowler states that Dr. Sanders told him that was no longer the policy because the medical director, Dr. Minev, prohibits dentists from recommending or performing root canals. *Id.* However, in response to a grievance, Dr. Sanders wrote that Dr. Minev "does not prohibit the treatment requested, the AR's [sic] prohibit this treatment." ECF No. 62-2 at 64.  Dr. Sanders also wrote that if Fowler wanted further treatment, he could have the tooth extracted. *Id.*

Fowler was seen again in May 2020 after another tooth started to bother him. ECF No. 60 at 41-42; 34-1.  According to Fowler, Dr. Doe 21 told him that HDSP was not equipped to perform a root canal, so even if he wanted to give Fowler a root canal, he could not. *Id.* at 42-43. Fowler states that Dr. Doe 21 told him that implants were superior to root canals, so if Fowler wanted his tooth extracted, he could get an implant upon his release from prison. *Id.* at 43.  The dental record confirms that Fowler was "informed that we are not equipped in the clinic to do root canal therapy & his options are to wait till he gets released & get [a root canal] or get tooth extracted here and get an implant to replace tooth when he gets out." ECF No. 34-1 at 2.

Fowler has not shown a likelihood of success on this claim because it amounts to a difference of opinion between the dentists and the prisoner about the appropriate medical care. Fowler has not presented evidence that an extraction as opposed to a root canal is medically

1  unacceptable under the circumstances.  Courts have rejected similar claims.[2]  Although Fowler

2  would prefer a root canal, that is not the standard for an Eighth Amendment deliberate

3  indifference claim.

4    Additionally, Fowler has failed to present evidence that the dental providers chose this

5  course of action in conscious disregard of an excessive risk to his health.  The record reflects that

6  when Fowler complained about his teeth, he was seen by the dentists who recommended

7  extraction.  While there is some evidence that the dental providers denied Fowler a root canal

8  based on a blanket de facto policy of not performing root canals except under limited

9  circumstances, the Ninth Circuit has indicated that would not constitute deliberate indifference in

10  the context of a prison offering extractions instead of root canals. *See Swartz v. Steinhauser*, No.

11  97-15721, 125 F.3d 859, 1997 WL 599547, at *1 n.2 (9th Cir. 1997); *Johnson v. Alameda Cnty.*

12  *Sheriff's Dep't*, No. 88-2792, 892 F.2d 83, 1989 WL 150630, at *2 (9th Cir. 1989).  Because

13  Fowler has not shown a likelihood of success on this claim, I deny his motions for injunctive

14  relief related to his dental care.

15  **C.  Hand Injury**

16    Fowler contends the defendants have refused to provide him with care for his injured

17  hand even though the prison doctor referred him to an orthopedic specialist.  He requests that I

18

---

19  [2] *See Swartz v. Steinhauser*, No. 97-15721, 125 F.3d 859, 1997 WL 599547, at *1 (9th Cir. 1997)
(stating that the inmate was offered an extraction and the "fact that [he] disagreed with the

20  procedure and refused treatment twice indicates only a difference in opinion and not deliberate
indifference by defendants"); *Johnson v. Alameda Cnty. Sheriff's Dep't*, No. 88-2792, 892 F.2d

21  83, 1989 WL 150630, at *2 (9th Cir. 1989) (holding no deliberate indifference where the inmate
"wanted a complete root canal treatment and the dentists recommended extraction"); *Rimer v.*

22  *Neven*, No. 2:14-cv-00889-RFB-CWH, 2017 WL 4227938, at *3 (D. Nev. Sept. 21, 2017)
(holding that offer to perform extraction instead of root canal was not deliberately indifferent)

23  *Dixon v. Bannister*, 845 F. Supp. 2d 1136, 1144 (D. Nev. 2012) ("Plaintiff has failed to present
evidence raising an issue of fact that the course of treatment of extracting Plaintiff's teeth and
providing a partial denture was medically unacceptable under the circumstances.").

order the defendants to refer him to an orthopedic specialist. ECF No. 27 at 8.  The defendants again argue that they have addressed Fowler's medical need and Fowler merely disagrees with their decision.

Fowler injured his left hand prior to being incarcerated. ECF No. 62 at 47.  In June 2019, his left hand got caught in the cell door, further injuring it. *Id.*  He was seen on July 8 by Dr. Bryan, who did not refer him to an orthopedic specialist and did not treat the hand in any other way. *Id.* at 48.  About a week later, Fowler was seen by Dr. Augustin for a different medical issue and Fowler mentioned his injured hand. *Id.*  Dr. Augustin ordered an x-ray but did not provide pain medication. *Id.*  The x-ray was performed on August 1. *Id.*  According to Fowler, the x-ray was examined by John Doe 23, who discouraged treatment and attributed any injuries to natural deterioration. *Id.*

On September 23, Dr. Bryan saw Fowler again for a different issue, but Fowler brought up his hand injury. *Id.*  According to Fowler, Dr. Bryan refused to refer Fowler to an orthopedic specialist because, in Dr. Bryan's opinion, the Utilization Review Panel[3] would be more likely to approve Dr. Bryan's other request for a referral for Fowler to see a gastroenterologist if Dr. Bryan did not also request a referral to an orthopedic specialist. *Id.*  Fowler requested that Dr. Bryan make a note in the medical record that Fowler needed surgery on his hand. *Id.*  According to Fowler, Dr. Bryan responded by stating that "anyone in their right mind can see that you need surgery." *Id.*  This time, Dr. Bryan prescribed Fowler some pain medication. *Id.* at 49.

Dr. Bryan saw Fowler again in March 2020, at which time Dr. Bryan referred Fowler to an orthopedic specialist. *Id.*; ECF No. 62-2 at 120.  In May 2020, the URP decided to continue to

---

[3] Under AR 613.02, "[a]ny out-of-institution consultation or treatment must have prior approval of the Utilization Review Panel, excepting emergencies." ECF No. 32-4 at 3.

1  monitor Fowler's hand instead of referring him to a specialist. ECF No. 62 at 49; 62-2 at 120;

2  34-3 at 2.  The URP's decision states that "[s]ymptoms [are] controlled on [Naproxen]." ECF

3  No. 34-3 at 2.  Fowler contends that no such monitoring has taken place, as he has not been seen

4  for his hand injury after that. ECF No. 62 at 49.

5      Fowler has presented evidence raising serious questions on the merits.  The defendants

6  characterize the URP's decision as simply a difference of opinion on the proper course of

7  treatment.  But according to Fowler, Dr. Bryan told him in September 2019 that he would not

8  refer Fowler to a specialist not because Dr. Bryan thought it was medically unnecessary but

9  because Dr. Bryan thought the URP would be less likely to approve it given that Dr. Bryan was

10 also recommending referral to a gastroenterologist. ECF No. 62 at 48.  If true, that suggests that

11 Dr. Bryan believes that the URP does not review referrals based solely on medical necessity and

12 instead may consider the number of referrals for a particular inmate regardless of whether each

13 referral is medically necessary.  Fowler also states that Dr. Bryan told him that "anyone in their

14 right mind can see that you need surgery." *Id.* at 48.  That testimony stands unrebutted at this

15 point, as does Fowler's assertion that despite the URP's decision to monitor his situation, he has

16 not been seen for his hand since then.[4]  The defendants have not presented evidence to show that

17 denying a referral to an orthopedic specialist is medically acceptable under the circumstances

18 where the treating physician has allegedly determined that the need for surgery is obvious.

19     However, Fowler's showing on the URP having a culpable state of mind is weak.

20 Although Dr. Bryan allegedly made these statements to Fowler, there is no evidence before me

21 as to what the URP was reviewing when it made its decision.  If Dr. Bryan did not make similar

23

[4] Fowler does not state, however, that he has sought medical treatment for his hand after the URP's denial, so it is possible the failure to monitor is based on Fowler's lack of complaints.

12

notations in Fowler's medical record or provide similar statements to the URP, then the URP's

conclusion that Fowler's symptoms were being adequately managed through pain relief may not

have been in conscious disregard for an excessive risk to Fowler's health.  No one provides

Fowler's medical records, so it is unclear, for example, whether Dr. Bryan was recommending

referral to a specialist while also noting Fowler's pain was being well managed by Naproxen.

Additionally, it is not clear from the record that Fowler will suffer irreparable harm if I

do not order injunctive relief.  He acknowledged in one grievance that the pain pills were helping

him manage the pain[5] and he has presented no evidence that absent surgery, the condition of his

hand will worsen.

Even if some amount of untreated pain constitutes irreparable harm, he has not shown

that the balance of hardships tips sharply in his favor or that an injunction is in the public

interest, particularly where Fowler seeks a mandatory injunction ordering the defendants to

provide him with an appointment with an outside orthopedic specialist.  As discussed above, in

light of the current Covid-19 pandemic, I lack information on what logistical barriers may

impede referral to an outside orthopedic specialist.  I also lack information about how much the

Naproxen is managing Fowler's pain, whether a delay in obtaining a referral and possible

surgery will result in further deterioration of the hand, and what Dr. Bryan meant by the need for

surgery being obvious (if indeed he made that statement).  I therefore deny Fowler's motion for a

temporary restraining order, but I will set Fowler's motion for a preliminary injunction for an

evidentiary hearing regarding whether mandatory injunctive relief requiring referral to an

orthopedic specialist is warranted.

---

[5] ECF No. 62-2 at 116 (stating the "pain pills help, but actually fixing the problem would help a lot more").

**D.  Digestive Issues**

Fowler requests the defendants be ordered to provide the probiotics that his doctor prescribed. ECF No. 27 at 8.  The defendants respond that although the probiotics were initially prescribed, the probiotics were non-formulary and required a justification.  The prescribing physician did not provide a non-formulary justification and the order was rescinded seven days later.  They also argue that no doctor has re-prescribed the probiotics to Fowler in over a year and only a doctor should prescribe them, not the court.  But the defendants also note that the probiotics no longer require a non-formulary justification, so Fowler can seek another medical appointment and request the doctor to prescribe them.

In his reply, Fowler withdrew this request for injunctive relief based on the defendants' response. ECF No. 45 at 9-10.  I therefore deny this portion of his motions as moot.

**E.  Medical Staffing**

Fowler contends that Dr. Minev has inadequately staffed doctors, dentists, and psychiatrists at HDSP, resulting in long delays when he has needed treatment for his various injuries.  He requests that I order the defendants to "hire and retain enough medical, nursing, dental, psychiatric, and other necessary staff to ensure that appointments and follow-ups occur within a constitutionally adequate timeframe." ECF No. 27 at 8.  The defendants respond that Fowler has not presented evidence that current medical staffing levels are deficient or that deficient staffing levels have caused him harm.  They also note that Fowler is requesting mandatory injunctive relief with his request that NDOC be required to hire more medical staff. They contend he has not clearly shown this relief is needed.

Fowler has not presented sufficient evidence to support such a sweeping and intrusive remedy as this court entering a mandatory injunction ordering NDOC to hire additional medical, dental, and psychiatric staff.  I therefore deny Fowler's motions for this relief.

**F.  Outdoor Exercise**

Fowler contends that he has been given less than two hours of outdoor exercise time per week on a regular basis.  He requests that I order the defendants to create and follow a schedule that provides constitutionally adequate outdoor exercise time. ECF No. 27 at 9.  The defendants concede that outdoor exercise time has been restricted due to the Covid-19 pandemic, which has required NDOC to take measures to protect inmates and staff from contracting the virus.  The defendants note that although no yard time was authorized between May 5 and June 22, 2020, it has since been restored and Fowler is scheduled for two hours per week.  The defendants contend they are working to ensure inmates get adequate yard time while also protecting them from the virus.

"Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083,1089 (9th Cir. 1996).  However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).  Prison officials may restrict outdoor exercise based on weather, unusual circumstances, or disciplinary needs. *See Spain v. Procunier*, 600 F.2d 189, 199-200 (9th Cir. 1979).

Fowler states that he has been at HDSP for 41 months, during which time he has regularly received less than three hours per week of outdoor exercise time because even though more time is scheduled, it regularly starts late, ends early, or is canceled altogether. ECF No. 62 at 66.  The defendants have presented evidence that there was a lockdown in May and June 2020,

during which time the inmates received no yard time, but that as of June 22, 2020, two hours of

yard time per week has been restored. ECF No. 32-9.  The policy of two hours per week

apparently is meant to comply with Governor Sisolak's directive in response to the pandemic to

limit gatherings of no more than 50 people per group. *Id.*

The defendants' response assumes that two hours of yard time per week is

constitutionally adequate under the circumstances, but they cite no law in support.  And they do

not address Fowler's evidence that even before the pandemic, he and other inmates were

regularly deprived of even two hours of outdoor time because the inmates are released late or

recalled early. *See* ECF Nos. 46 at 4, 7, 10, 13, 16, 19, 22, 25, 28, 31; 62 at 66.

Fowler has thus raised serious questions on the merits on the objective portion of his

Eighth Amendment claim.  But I deny his motion for a temporary restraining order because his

showing on the subjective prong of his claim is weak.  The inmates' need for outdoor exercise

time must be balanced against the danger posed to inmates and staff by Covid-19.  The current

schedule seeks to balance these competing concerns, which suggests it is not in conscious

disregard of the inmates' health.  Additionally, Fowler has not shown that the balance of

hardships tips sharply in his favor or that an injunction is in the public interest considering these

competing concerns.

Moreover, I lack sufficient information to determine whether an Eighth Amendment

violation is presently occurring such that injunctive relief is appropriate given the potentially

temporary nature of the new schedule while the pandemic is ongoing and the Governor's

directive is in place.  And I lack information about whether other considerations are at play, such

as institutional safety and disciplinary concerns, as well as whether Fowler has access to indoor

facilities for out-of-cell exercise and interaction with other inmates.  I therefore will hold an

1  evidentiary hearing regarding whether the defendants are providing constitutionally adequate

2  outdoor exercise time under the circumstances.

3      **G.  Cleaning Supplies**

4      Fowler contends inmates have inadequate cleaning supplies to keep their cells clean

5  because they do not have toilet brushes, gloves, hand sanitizer in common areas, and cleaner to

6  wipe down common use items like phones and microwaves between uses.  He also contends the

7  showers are infrequently cleaned and inmates are given inadequate personal hygiene supplies.

8  He requests that I order the defendants to provide "all the cleaning supplies and inmate workers

9  necessary for ensuring constitutionally adequate sanitation." ECF No. 27 at 9.  The defendants

10  respond that due to the pandemic, cleaning and related supplies have been increased.  The

11  defendants argue there are surface sanitation teams who use a ten percent bleach concentration to

12  clean surfaces, and that hand soap is available in inmates' cells and in the common areas.

13      "Prison officials have a duty to ensure that prisoners are provided adequate . . .

14  sanitation." *Johnson*, 217 F.3d at 731.  Subjecting a prisoner "to lack of sanitation that is severe

15  or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."

16  *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314, *opinion amended on denial of reh'g*, 75 F.3d 448

17  (9th Cir. 1995).

18      According to Fowler, inmates receive a scrubbing pad and a tablespoon of powdered

19  cleaning material. ECF No. 62 at 71.  He also asserts inmates are not given mops or toilet

20  brushes. *Id.*  He avers that the porters are given mops, but the heads are exchanged infrequently,

21  and the cleaning solution is very diluted. *Id.*  He states there is no hand sanitizer or soap in the

22  common areas or kitchens, the common areas are cleaned infrequently, and when they are

23  cleaned it is with dirty rags and overly diluted cleaning solutions. *Id.*  He also asserts that nothing

is provided to clean frequently used items, such as the telephone, between uses. *Id.*  He states that floors are not cleaned after inmates return from the yard, resulting in various unsanitary items being tracked in on the inmates' shoes. *Id.*  He also contends that because the inmates are not provided access to a restroom while out on the yard, they use the shower as a restroom, so the showers often have urine and feces in them. *Id.* at 71-72.  Finally, he contends general population inmates are allowed to prepare the food for inmates like Fowler who are in protective segregation and they contaminate the protective segregation inmates' food. *Id.* at 71.  Fowler presents affidavits from other inmates who attest to the lack of cleaning supplies as well as the problems with the floors and the showers. ECF No. 62-4 at 18-48.

The defendants present no contrary evidence except to point to NDOC's website that outlines cleaning protocols in response to Covid-19. *See* ECF No. 32 at 19 (citing NDOC website).  But NDOC's protocols do not necessarily reflect what conditions are actually like at HDSP.  According to Fowler's evidence, there are no sanitation teams, there is no hand soap in common areas, and other unsanitary conditions have persisted over a long period of time.  The defendants present no competing evidence about actual conditions at the facility.  Given NDOC's protocols that require certain sanitation procedures, a chronic failure to abide by those and other sanitation requirements raises the inference of a conscious disregard to sanitation.  Fowler thus has raised serious questions on the merits on this claim.

But I deny Fowler's motion for a temporary restraining order.  Fowler's requested relief is too vague.  He seeks an order requiring the defendants to provide "all the cleaning supplies and inmate workers necessary for ensuring adequate sanitation at HDSP." ECF No. 27 at 9.  That request is not sufficiently detailed to constitute a manageable and enforceable order.  Further, to the extent Fowler's motion can be interpreted to request specific items, like a toilet brush, those

requests raise potential institutional safety and security concerns that may alter my evaluation of whether the balance of hardships tips sharply in his favor or whether the public interest would favor certain remedies.  Likewise, I lack sufficient information to evaluate whether and to what extent sanitation conditions have changed at HDSP in response to the pandemic and whether those new protocols address other problems Fowler has identified, such as feces often being in the shower drains.  I therefore set Fowler's motion for a preliminary injunction for an evidentiary hearing regarding whether the defendants are providing constitutionally adequate sanitation.

### H.  Motion for Clarification

Fowler seeks clarification of the interplay between my order instituting a 90-day stay pending the mediation in this matter and my order stating that the stay did not apply to the supplemental briefs I allowed the parties to file.  *See* ECF Nos. 74; 75.  Fowler's request is largely moot because he asks hypothetical questions about whether certain filings related to the supplemental briefs would violate the stay order, but no one filed supplemental briefs.  However, Fowler states that he intends to file documents related to his injunctive relief motions, such as a motion for a writ of habeas corpus ad testificandum and a motion for expedited limited discovery, unless doing so would violate the stay order.

As set forth below, I am ordering the parties to confer about the logistics and timing of the evidentiary hearing.  As part of that dialogue, Fowler and the defendants should discuss any motions they intend to file in relation to the preliminary injunction motion and should attempt to resolve any issues without having to request the court's intervention.  To the extent the parties cannot resolve their differences, they must set forth their respective positions in a status report.  Filing of the status report will not violate the stay because I am directing it to be filed.  If the parties request motion practice in the status report, I will rule on those requests.  Absent a ruling

from me that permits another motion or other paper to be filed during the stay, no party may file such motion or paper unless it is an ancillary, non-substantive issue, such as a motion to extend time to file the status report, or something required by the Local Rules, such as Fowler updating his address if it changes.

## II.  CONCLUSION

I THEREFORE ORDER that plaintiff Skyler Fowler's motion for temporary restraining order **(ECF No. 27) is GRANTED in part**.  The motion is granted in that I order the defendants to schedule Fowler for an appointment with Dr. Dupry by January 8, 2021.  By January 15, 2021, the defendants shall file under seal a report from Dr. Dupry showing that he saw Fowler and documenting his diagnosis, his recommended treatment going forward, and whether he recommends referral to a neurologist.  The motion is denied in all other respects.

I FURTHER ORDER that plaintiff Skyler Fowler's motion for preliminary injunction **(ECF No. 28) is DENIED in part**.  The motion is denied as to Fowler's requests for relief related to his dental care, his digestive issues, and insufficient staff.  I will set the remainder of his motion for preliminary injunction for an evidentiary hearing on issues related to his neurological problem, his hand injury, outdoor exercise, and sanitation.

I FURTHER ORDER that by January 25, 2021, the parties shall confer about the logistics and timing of the evidentiary hearing, including when the hearing should be scheduled; how many court days are needed for the hearing; how many and which witnesses will be called; whether any pre-hearing discovery is needed and if so, the timing of that discovery in relation to the hearing; the most efficient way to present evidence either by Zoom hearing (and how to set up the video connection) or by affidavit (while considering the potential credibility evaluation

problems that may be posed by affidavit-only evidence);[6] and whether any other motion practice

related to the hearing should be allowed as well as the timing of any such motions in relation to

the hearing.  The parties shall file a joint status report regarding the results of their discussion by

February 12, 2021.

I FURTHER ORDER that plaintiff Skyler Fowler's motion for clarification **(ECF No.**

**79) is GRANTED** in that I have clarified my prior orders.

DATED this 18th day of December, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[6] For example, the parties may consider whether to present direct testimony by affidavit and cross examination by live testimony.